## THE PEOPLE v. TORRES.

### APPEAL from the District Court of Ponce.

No. 305.—Decided January 23, 1911.

CONTRIBUTIONS FOR POLITICAL PURPOSES.—Any person who extorts contributions from a public officer or employe for political purposes commits a very serious offense which affects the integrity and discipline of the civil service and is provided for and punished by section 14 of the Civil Service Act, approved March 14, 1907.

The facts are stated in the opinion.

*Mr. José Tous Soto* for appellant.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

Section 14 of the Civil Service Law, Laws of 1907, page 182, provides:

"That no person in the civil service of Porto Rico shall be under obligations to contribute to a political fund or to render a political service, or to be removed or otherwise prejudiced for refusing to do so. Any person soliciting political contributions from public officers or employes shall be subject to a penalty of not exceeding $500 or to imprisonment not exceeding six months, or both."

Marcelino Torres Zayas, secretary of the School Board of Juana Díaz, was charged with having solicited and de-

manded of Rafael Suarez, a school teacher of the same place, that he pay $1 a month to cover the local costs of the Republican party. The evidence showed that Marcelino Torres not only made this solicitation prohibited by law but threatened Suarez with the loss of his position, and the District Court of Ponce fined the defendant $100, or, in default thereof, to one month in jail. The case was heard on appeal by the District Court of Ponce, the Municipal Court of Coamo having previously fined the defendant $15. There was no appearance for the appellant in this court and no brief filed. The record discloses no error. The crime is a very serious one and affects the integrity and discipline of our civil service. The Supreme Court of the United States, in construing a section making soliciting political contributions under certain conditions an offense, has said in *Ex parte* Curtis, 106 U. S., 373, *et seq.:*

"The evident purpose of Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service. Clearly such a purpose is within the just scope of legislative power, and it is not easy to see why the act now under consideration does not come fairly within the legitimate means to such an end. It is true, as is claimed by the counsel for the petitioner, political assessments upon office-holders are not prohibited. The managers of political campaigns not in the employ of the United States are just as free now to call on those in office for money to be used for political purposes as ever they were, and those in office can contribute as liberally as they please, provided their payments are not made to any of the prohibited officers or employes. What we are now considering is not whether Congress has gone as far as it may, but whether that which has been done is within the constitutional limits upon its legislative discretion.

"A feeling of independence under the law conduces to faithful public service, and nothing tends more to take away this feeling than a dread of dismissal. If contributions from those in public employment may be solicited by others in official authority, it is easy to see that what begins as a request may end as a demand, and that a failure to meet the demand may be treated by those having the power of removal as a breach of some supposed duty, growing out of the

political relations of the parties. Contributions secured under such circumstances will quite as likely be made to avoid the consequences of the personal displeasure of a superior as to promote the political views of the contributor—to avoid a discharge from service, not to exercise a political privilege. The law contemplates no restrictions upon either giving or receiving, except so far as may be necessary to protect, in some degree, those in the public service against exactions through fear of personal loss." *  *  *

"If there were no other reasons for legislation of this character than such as relate to the protection of those in the public service against unjust exactions, its constitutionality would, in our opinion, be clear; but there are others, to our minds, equally good. If persons in public employ may be called on by those in authority to contribute from their personal income to the expenses of political campaigns, and a refusal may lead to putting good men out of the service, liberal payments may be made the ground for keeping poor ones in. So, too, if a part of the compensation received for public services must be contributed for political purposes, it is easy to see that an increase of compensation may be required to provide the means to make the contribution, and that in this way the government itself may be made to furnish indirectly the money to defray the expenses of keeping the political party in power that happens to have for the time being the control of the public patronage. Political parties must almost necessarily exist under a republican form of government; and when public employment depends to any considerable extent on party success, those in office will naturally be desirous of keeping the party to which they belong in power. The statute we are now considering does not interfere with this. The apparent end of Congress will be accomplished if it prevents those in power from requiring help for such purposes as a condition to continued employment."

We think these considerations are applicable to the reasons for the existence of the law under which defendant was sentenced. The judgment must be affirmed, but it should be amended so as to make the alternative punishment follow the law.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Aldrey did not sit at the hearing of this case.